Leon Schwerzmann, Jr., J.
The executors of this estate, having failed to pay over 33%% of the New York estate tax *462 due thereon until nearly six years after the date of decedent’s death, seek to have the resulting interest liability on the unpaid portion reduced from 10% to 6% per annum.
The governing statute, of course, is subdivision 1 of section 249-z of the Tax Law, made applicable by subdivision (b) of section 962 thereof. Relevant to this application, subdivision 1 of section 249-z provides that the tax in question ‘ ‘ shall be due and payable at the time of the decedent’s death and shall be paid by the executor that if any portion of such tax is not paid within 15 months of decedent’s death, or within any extension thereof, “ interest shall be charged and collected thereon at the rate of ten per centum per annum from the date of the decedent’s death to the date of payment and that the rate of such interest may be reduced by the court from 10% to 6% “ if by reason of * * * necessary litigation or other unavoidable cause of delay the tax ca/rmot he determined amd paid as herein provided, but such reduction of interest shall be only for the period during which such cause of delay was operative.” -(Emphasis supplied, in sixth unnumbered paragraph of subd. 1.) With reference to the emphasized portion of the foregoing paragraph, it may be noted that the section expressly provides a method for determining and paying the tax, at any time before it is actually assessed and its exact amount known, by authorizing the representative to estimate the amount of the tax and to make a “ temporary payment ” in anticipation thereof “ for the purpose of avoiding interest ”.
The facts, in order of their occurrence, were these: The decedent died on July 26, 1963, and on January 27, 1964, the executors paid $30,000 in anticipation of the New York estate tax. In October of 1964, the executors filed a Federal inheritance tax return, but failed to file the corresponding State return which was due at the same time. In July of 1966, the executors were first advised, and by letter dated October 3, 1967 they were formally notified of the results of the audit of their Federal return. These indicated (a) that the executors had undervalued the net taxable estate to the extent of $317,514, (b) that at least 68% of this undervaluation, or $226,027 thereof, was attributable to errors and omissions on the part of the executors in the preparation of the return, i.e., their miscalculation of the marital deduction, their omission of certain assets, their improper valuation of a government bond, and their treatment of the estimated estate tax as a direct deduction from the gross taxable estate, and (c) that the Internal Revenue Service was taking the further position that the *463 executors had undervalued the stock of a closely held corporation to the extent of $20,161, and that they had failed to include in the gross taxable estate, as a gift in contemplation of death at a value of $71,325, a certain insurance policy which the decedent had transferred to his son just prior to his death.
The executors subsequently engaged in both tax and condemnation litigation, but the record is silent as to the relevant particulars of either. The moving papers show only that “litigation was instituted in the Tax Court,” that “coincidental” therewith certain condemnation “litigation was also undertaken,” and that the tax litigation was terminated by a consent order made and entered on December 9, 1969, Following the tax litigation, and in April of 1970, the executors paid the deficiency in the Federal tax; on June 25, 1970, they made an additional payment of $20,000 in anticipation of the unpaid balance of the State tax; and on July 3, 1970, they filed their first and only State return. The amount of the State tax was fixed at $45,023.09 on July 10, 1970.
The proof here falls far short of that required under the sixth unnumbered paragraph of subdivision 1 of section 249-z. That provision, by its express terms, imposed upon the executors the burden of showing (a) that the litigation advanced as the cause for delay was “ necessary,” and (b) that, solely by reason of such litigation, the executors could not, at any time between the date of decedent’s death (July 26, 1963) and the date upon which they paid the balance of the tax (June 25, 1970), know or anticipate whether, or to what extent, the tax assessed would exceed the amount of $30,000 which they had paid thereon, or estimate and pay the whole or any part of such excess. The moving papers are devoid of any facts so showing. They merely recite that tax litigation was ‘4 instituted ” and condemnation litigation “undertaken,” and then simply beg the questions at issue by concluding, without supporting proof of any kind, that “ such litigations constituted due cause for the delay in filing and paying an additional amount toward the * * * tax.”
This application must be denied not only for lack of proof, but as well for lack of merit. It seems evident on this record that the executors’ failure to anticipate and pay the full amount of the tax prior to June 25, 1970 was in no sense due to intervening litigation, but rather to their own lack of diligence or familiarity with applicable law. The executors at all times had on hand ample funds with which to pay the tax many times over; and, under subdivision 1 of section 249-z, they *464 had both the right and the duty to toll interest thereon. Had they accurately estimated and paid the tax within 15 months of decedent’s death, they could have avoided all interest; had they accurately estimated and paid it at any time thereafter, they could have tolled the continuance of interest.
Due to a succession of errors, however, the executors not only needlessly incurred a substantial penalty, but they failed to toll its continuance until nearly seven years after the date of decedent’s death. The executors erred first in substantially underestimating the tax for the purpose of their original payment. The tax, based upon applicable values shown in their Federal return filed shortly thereafter, approximated $40,000; but they paid in anticipation thereof only $30,000. Had they further anticipated, as they had every reason to, that an insurance policy transferred by the decedent to his son shortly before his death, would be considered as a gift in contemplation of death, the resultant tax would approximate between $42,000 and $45,000. Under these circumstances, and with ample funds for the purpose, prudence should have dictated an original payment in anticipation of taxes of at least $47,000, which would have been more than ample to toll all interest.
The executors’ second costly error was their failure to act upon the information disclosed by the audit of their Federal return. As early as July of 1966, they were aware that the Internal Revenue Service was objecting not only to the miscalculations and omissions in their original computation of the tax noted above, but as well to the value which they had placed upon shares of a closely held corporation owned by decedent. At all times thereafter, they were on notice and must be charged with anticipating that, by reason of these developments, the State tax was certain to fall within a range of between about $42,000, if only those objections to which they had no defense were established, and about $46,000, if all objections were established. Although it was clearly incumbent upon the executors, under these circumstances, to re-estimate the State tax and to make the appropriate additional payment thereon for the purpose of tolling the continuance of interest, they did nothing. The price of their failure to act was four years of unnecessary interest. Finally, of course, the executors needlessly incurred further interest by delaying the full payment of the tax for several months after all uncertainty as to the outcome of the tax litigation had been removed.
There can be no justification for a record of neglect such as this, Had uncertainty as to the outcome of pending litigation *465 played any significant role in the executors’ failure to estimate and pay the full amount of the tax, it could at best have affected only the aliquot part of the unpaid tax attributable thereto for such limited period as the outcome could not have been reasonably anticipated. It could in no way affect, let alone justify, the executors’ original miscalculation nor their continuing failure for a period of nearly seven years thereafter to take appropriate corrective action.
The failure of the State Tax Commission to oppose this application in no way aids the executors. Belief by default may not be granted where, as here, there has been no prima facie showing of any right to such relief. Moreover, to grant the relief requested, solely by reason of the Tax Commission’s failure to defend, would not only be to reward the executors at the expense of the public, but as well to condone a clear abdication by the Tax Commission of its statutorily imposed duty to protect the interest of the public in matters of this kind. Both results would be contrary to public policy.
The application must be dismissed both for lack of proof and upon the merits.