OPINION OF THE COURT
Bertram R. Gelfand, S.
This application by one of the coexecutors to reduce the rate of interest upon unpaid estate taxes from 10% per annum to 6% per annum from the date of decedent’s death is opposed by the State Tax Commission.
Decedent died on February 12, 1974. Letters testamentary were issued on April 2, 1974. The first payment on account of *1017 New York estate taxes was made on August 20, 1974 in the sum of $9,000 and the second payment in the sum of $8,479.74 was paid on an unspecified date in August, 1977. The petition to fix New York State estate taxes was filed with the court on June 2, 1977 and on June 30, 1977 an order was signed fixing the tax in the sum of $17,479.74 based upon a gross estate in the sum of $572,882.31.
The United States estate tax return was timely filed on November 5, 1974. The State Tax Commission does not dispute petitioner’s contention that the $9,000 paid in August, 1974 would have covered in full the estate taxes due to New York if the valuation set forth by the taxpayer on the Federal return had been accepted. However, this return was audited which resulted in I.R.S. notifying the estate by a letter dated December 22, 1976 that it had determined that the total gross estate should be in the sum of $1,118,944 instead of the sum of $382,419 as reported on the tax return by the petitioner. I.R.S. reached this determination by increasing the value of decedent’s interest in 12 corporations whose principal assets were real estate by approximately $686,000, thus making the total of schedule "B” of the return $967,453.74 instead of the $281,186 reported by the estate; by increasing schedule "C” of the return by the sum of $257.26 for the failure to adjust the balance in a bank account to the date of decedent’s death, and by increasing schedule "F” of the return by $50,000 for the failure to list therein as an asset a $50,000 loan that the decedent had made to one of the real estate corporations in which he had an interest.
After a conference, I.R.S. notified the estate by a letter dated April 22, 1977 that it would accept approximately $422,000 as the correct total value of schedule "B” instead of the $967,000 it had originally determined should be the total of that schedule. It appears that I.R.S. adhered to its original position as to the amount that schedules "C” and "F” of the return should be increased and the estate did not take issue with this determination.
Under section 249-z (subd 1, par [f]) of the Tax Law, if the estate tax has not been paid within 15 months of the date of death and the estate has not received an extension for the time of payment, the Surrogate may reduce the rate of interest from the date of decedent’s death from 10% per annum to 6% per annum if the late payment was caused "by reason of claims made upon the estate, necessary litigation or other *1018 unavoidable cause of delay” and the "reduction of interest shall be only for the period during which such cause of delay was operative.”
The State Tax Commission contends that the interest should not be reduced because the estate paid only approximately 50% of the tax due within 15 months of decedent’s death. The reduction in interest from 10% per annum to 6% per annum provided by the statute is not based upon the percentage of tax that is paid within six months or 15 months of decedent’s death. Legitimate issues with I.R.S. as to proper valuation constitute "necessary litigation or other unavoidable cause of delay” within the ambit of section 249-z (subd 1, par [f]) of the Tax Law (Matter of Agins, 89 Misc 2d 626). Here, with regard to the value of the disputed 12 items in schedule "B” of return as in Matter of Agins (supra), the position of the taxpayer as to value was significantly closer to the valuations finally fixed by compromise than the valuations originally set forth upon audit by the I.R.S. The final determination as to the total value of schedule "B” resulted in an increase of approximately $141,000 instead of the approximately $686,000 demanded by the I.R.S. Under these circumstances, payment of a sum on account of taxes on the valuation in schedule "B” originally fixed by the taxpayer represents a reasonable course of conduct. However, the balance of the estate tax due to the State of New York should have been paid within 30 days of the April 22, 1977 letter from I.R.S. adjusting the tax. Accordingly, the reason for the delay was not operative after May 21, 1977 and the interest on the tax due may not be reduced for the period from that date until the tax is paid in full.
This application must also be denied to the extent that the increase in the tax resulted from increases in schedules "C” and "F” of the return. As to the items listed in these schedules, petitioner accepted the increases demanded by I.R.S. and failed to introduce in this proceeding any evidence that there was a reasonable dispute as to the total value of these schedules. It cannot be determined that the increases in the tax resulting from the increase of these schedules was the result of either necessary litigation or unavoidable delay (Matter of Agins, supra; Matter of Sullivan, 65 Misc 2d 461).
Accordingly, based on the aforesaid, it is concluded that the interest on the tax may be reduced from 10% per annum to 6% per annum from the date of death of the decedent until May 21, 1977 to the extent that the tax was increased as a *1019 result of the adjusted value of the items listed in schedule "B” of the Federal tax return. The balance of the application is denied.